ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 1 6 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| YUSSUF ABDEL-ALEEM, MINALKUMAR PATEL, MYRON MOOREHEAD, and OMAR ABDEL-ALEEM<br><br>Plaintiff,<br><br>vs.<br><br>ALLISON STRUEBING, HOUSTON'S RESTUARANTS OF GEROGIA, INC., and HILLSTONE RESTAURANT GROUP, INC.,<br><br>Defendant. | Case No.:<br><br>JURY DEMANDED <br><br>**1:15-CV-2139** |

## PLAINTIFFS' VERIFIED COMPLAINT AND JURY DEMAND

Plaintiffs bring this Complaint against Defendants for equitable relief and damages resulting from racial profiling and intentional discrimination and allege as follows.

## PARTIES

1.

Plaintiff Yussuf Abdel-aleem (hereinafter, "Yussuf") is an Arab American citizen of the United States and a resident of 3242 Peachtree Rd., NE, Unit 1103, Atlanta, GA 30305. He is a respected attorney licensed to practice within the states

of Georgia, Massachusetts, and New York. Yussuf is a graduate of Harvard School of Law and is the managing member of Joseph, Aleem & Slowik, LLC, a healthcare compliance and litigation law firm.

2.

Plaintiff Minalkumar Patel (hereinafter, "Patel") is an Indian American citizen of the United States and a resident of 2171 Peachtree Road NW #19, Atlanta, GA 30309. He is the owner and CEO of LabSolutions, LLC, a highly successful clinical toxicology and molecular genetics laboratory based out of Atlanta, GA.

3.

Plaintiff Myron Moorehead (hereinafter, "Moorehead") is an African American citizen of the United States and a resident of 2168 Whitekirk St. NW, Kennesaw, Georgia 30152. He is the CEO of Pro Care Counseling, LLC, a highly successful pre-addictionology counseling center based out of Atlanta, GA.

4.

Plaintiff Omar Abdel-aleem (hereinafter, "Omar") is an Arab American citizen of the United States and a resident of 3060 Dogwood Creek Parkway, Duluth, Georgia 30096. He is Vice President of research and development at LabSolutions, LLC.

5.

2

Defendant Allison Struebing (hereinafter, "Struebing") is a white Caucasian citizen of the United States and the general manager of Houston's Restaurant of Georgia, Inc.

6.

Defendant Houston's Restaurant of Georgia, Inc. (hereinafter, "Houston's") is a for-profit Corporation with its principle office located at 700 W. Paces Ferry Road NW, Atlanta, GA 30327-2644. It may be served at 1200 C&S Bank Building, Atlanta, GA 30303 to one named Walter M. Grant, Defendant Houston's registered agent. Defendant is a Corporation under the laws of the state of Georgia and generally open to the public, as defined by 42 U.S.C. § 2000a(b). Defendant Houston's is wholly owned by Defendant Hillstone.

7.

Defendant Hillstone Restaurant Group, Inc. (hereinafter, "Hillstone" and together with Struebing and Houston's, "Defendants") is a for-profit Corporation with its principle office located at 2710 E. Camelback Rd., Suite 200, Phoenix, AZ 85016. It may be served at 1201 Peachtree Street NE, Atlanta, Georgia 30361 to one named CT Corporation System, Defendant Hillstone's registered agent. Defendant is a Corporation or limited liability Company under the laws of the State of Georgia and generally open to the public, as defined by 42 U.S.C. § 2000a(b).

3

## JURISDICTION AND VENUE

### 8.

This action involves a federal question action for damages and equitable relief, based on discrimination in a place of public accommodation undertaken by Defendants against Plaintiffs based on their race. Defendants reside and/or do business in Fulton County, Georgia and the acts complained of occurred exclusively within Georgia; thereby making venue and jurisdiction in this Court proper.

### 9.

This Court has supplemental jurisdiction over Plaintiffs' state and local and/or municipal law claims pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

### 10.

Plaintiffs, on April 15, 2015, at approximately 7:00 p.m. in the evening, entered the Houston's (a restaurant located at 2166 Peachtree Rd NW in Atlanta, Georgia).

### 11.

Shortly thereafter, Plaintiffs, who are each minorities, were seated within the restaurant by an unidentified waitress. Plaintiff Yussuf was wearing a baseball cap as he entered the dining area and while seated.

### 12.

4

The unidentified waitress who seated Plaintiffs did not inform Yussuf that he needed to remove the baseball cap, or otherwise inform him of any policy against wearing it.

13.

As Plaintiffs awaited service, Struebing, a white Caucasian and the general manager of Houston's, and acting within the scope of her employment and agency as a manager, approached the table where all four (4) were seated. She had not approached any other table prior to Plaintiffs'.

14.

In an aggressive tone, she ordered Plaintiff Yussuf to remove his hat without any explanation whatsoever.

15.

While removing his hat, Plaintiff Yussuf's phone began to ring at the dining area. He was receiving a call from one of his clients, whom he is ethically obligated to communicate with. Plaintiff Yussuf answered the call. As Plaintiff Yussuf answered the call, Struebring scornfully demanded that he hang up on his client as cellular phone usage was against a restaurant policy.

16.

Plaintiff Yussuf politely informed Struebing that he did not appreciate being loudly and publicly chastised, especially because he was in the company of

5

important clients (Plaintiffs Patel, Moorehead, and Omar) and was on the line with yet another.

17.

Several patrons of the restaurant noticed Struebing's chastisement of Plaintiffs.

18.

All Plaintiffs became highly embarrassed by the attention Struebing's loud demands brought upon them.

19.

Plaintiff Yussuf complied with Struebing's demand by removing his hat and ending his phone conversation with his client.

20.

Despite Plaintiff Yussuf's compliance, Struebing demanded that all Plaintiffs immediately leave the restaurant without any further explanation.

21.

This demand was also made in front of several other patrons, exacerbated the embarrassment all Plaintiffs had already experienced, and cast Plaintiffs in a negative light.

22.

Plaintiff Yussuf requested to see the policy against wearing hats and speaking on a cellular phone.

23.

Struebing refused to provide any of Plaintiffs with the purported policies and stormed off.

24.

Struebing returned with an unidentified large man who publicly demanded all Plaintiffs leave the restaurant and threatened to call the police if they didn't.

25.

Plaintiffs Patel, Moorehead, and Omar were also ordered to leave the restaurant despite remaining silent and abiding by the purported policies referenced by Struebing.

26.

All Plaintiffs were forced to leave the restaurant to avoid any further escalation by Struebing or the unidentified and menacing large man.

27.

Upon information and belief, Plaintiffs were the only minorities within the dining area of the restaurant.

28.

On June 9, 2015 at approximately 8:00 p.m., Plaintiff Patel returned to Houston's to have dinner with Plaintiff Omar and two prospective clients, both of whom were also of a minority race, to discuss a potential multi-million dollar business transaction. None of the other plaintiffs from the prior incident were with him.

29.

Without any hesitation, Houston's contacted the Atlanta Police Department to have Patel, Omar, and their prospective clients removed from the restaurant in front of a crowded dining room of patrons.

30.

Patel and Omar had violated no restaurant policies, stated or otherwise, when they were forced to leave the restaurant.

31.

Shortly after being seated, Officer Larca of the Atlanta Police Department and an unidentified Houston's employee approached Plaintiffs' table.

32.

Officer Larca of the Atlanta Police Department ordered Patel, Omar, and Patel's prospective clients to leave the restaurant.

33.

8

This incident humiliated and embarrassed Patel and Omar, who were subjected to chastisement and discrimination in front of a crowded room of patrons for a second time.

34.

Plaintiff Omar, Plaintiff Patel, and Plaintiff Patel's prospective clients were further embarrassed by being escorted out of the restaurant by Officer Larca upon Struebing's request.

35.

Upon information and belief, Plaintiff Patel and Plaintiff Omar were the only minorities present in the dining area of the restaurant as these events transpired.

## COUNT 1: RACIAL DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF 42 U.S.C. § 2000(a)

36.

The allegations in paragraphs 1 – 35 above are incorporated by reference as though fully set forth herein.

37.

Plaintiffs had and have a right to full and equal enjoyment of Defendants' business/establishment, a place of public accommodation generally open to the public.

38.

Plaintiffs were denied that right based on their race. Plaintiffs attempted to contract for services and enjoy the full benefits and enjoyment of a public accommodation, and such services were available to similarly situated persons outside their protected class who received full benefits and/or were treated better. Defendants singled out Plaintiffs for harassment and embarrassment on the basis of their race. Defendants were motivated by Plaintiffs' Arab, Indian, and African-American races when they denied Plaintiffs service, scolded them, refused to describe or provide Houston's or Hillstone's policy when politely requested, and had all Plaintiffs publicly kicked out of the restaurant on April 15, 2015. Plaintiffs Patel, Moorehead, and Omar were forced to leave despite having abided by all purported policies. All plaintiffs were humiliated and embarrassed by Defendants' decision to single them out in a dining room full of white patrons.

39.

Plaintiffs Patel and Omar were further discriminated against on the basis of their race when they were ordered to leave Houston's on June 9, 2015 despite abiding by all purported policies, not becoming involved with any disagreements, and otherwise properly conducting themselves within the restaurant. Defendants singled out Patel and Omar because of their race, called the police, and had Omar, Patel, and Patel's prospective clients publicly removed from the restaurant by Officer Larca of the Atlanta Police Department.

10

40.

Defendants' denial of Plaintiffs' rights constitutes discrimination in violation of 42 U.S.C. § 2000(a).

## COUNT 2: DISCRIMINATION IN CONTRACTUAL RELATIONS IN VIOLATION OF 42 U.S.C. § 1981

41.

The allegations in paragraphs 1 – 40 above are incorporated by reference as though fully set forth herein.

42.

Plaintiffs are members of a protected class based on their race.

43.

Defendants intended to and did discriminate based on Plaintiffs' race.

44.

Defendants discriminated against Plaintiffs based on their race and interfered with Plaintiffs' ability to make, perform, modify, or terminate contracts, or enjoy all of the benefits, privileges, terms and conditions of the contractual relationship with Defendants. Specifically, Plaintiffs were treated dissimilarly based on their race and were refused service on multiple occasions. Furthermore, Plaintiffs were publicly

humiliated and chastised when they expressed dissatisfaction with Defendants clear discrimination.

45.

Defendants' denial of Plaintiffs' rights constitutes discrimination in violation of 42 U.S.C. § 1981.

## COUNT 3: INTENTIAL INFLICTION OF EMOTIONAL DISTRESS

46.

The allegations in paragraphs 1 – 45 above are incorporated by reference as though fully set forth herein.

47.

Defendants' refusal to serve Plaintiffs, public comments humiliating Plaintiffs, the manager's clear discrimination against Plaintiffs on the basis of their race, public demands that they leave the restaurant, and having Plaintiffs escorted out of the restaurant in front of a room of white patrons on two separate occasions, once by an unknown large man and once by an Atlanta Police Officer, was intentional or reckless, extreme and outrageous, and caused Plaintiffs severe emotional distress.

48.

Defendants committed the tort of intentional emotional distress.

## COUNT 4: TORTIOUS MISCONDUCT

49.

The allegations in paragraphs 1 – 48 above are incorporated by reference as though fully set forth herein.

50.

Defendants owes a duty to Plaintiff-Customers who were lawfully in Defendants' establishment by implied invitation for the purpose of transacting business, to protect them against the use of any discriminatory requirements tending to humiliate, mortify, and hurt the feelings of Plaintiffs.

51.

Defendants breached that duty by subjecting them to public humiliation, discrimination, and chastisement in a room full of white patrons on the basis of their race on two separate occasions, causing Plaintiffs to suffer great damages.

## COUNT 5: RACIAL DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF ATLANTA MUNICIPAL CODE § 94-68(a)(1)

52.

The allegations in paragraphs 1 – 51 above are incorporated by reference as though fully set forth herein.

53.

Defendants refused and rejected Plaintiffs from the privileges, services, and accommodations of its restaurant due to their race or perceived race.

13

54.

Defendants Hillstone and Struebing's discrimination caused Plaintiffs humiliation and embarrassment.

55.

Defendants' discrimination constitutes a violation of Atlanta Municipal Code § 94-68(a)(1).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request an Order from this Honorable Court granting the following relief:

(1)  Injunctive relief ensuring free and unfettered access to Defendants' establishment without future discriminations based on race;

(2)  Compensatory damages in an amount to be determined by the conscience of the Jury and evidence presented;

(3)  Trial by jury on all issues so triable;

(4)  Reasonable expenses and attorneys' fees incurred in bringing this action; and

(5)  Such other relief as the Court deems just and proper.

Respectfully submitted this_day of June, 2015.

14

JOSEPH & ALEEM, LLC

Tarek Abdel-aleem
Georgia Bar No. 946317

1130 Hurricane Shoals Rd. NE, Ste. 2600
Lawrenceville, GA 30043
Telephone: (678) 878-3042
tarek@josephaleem.com

*Counsel for Plaintiffs Yussuf Abdel-aleem, Omar Abdel-aleem, Minalkumar Patel,
and Myron Moorehead*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

YUSSUF ABDEL-ALEEM,
MINALKUMAR PATEL, MYRON
MOOREHEAD, and OMAR
ABDEL-ALEEM

          Plaintiff,

vs.

ALLISON STRUEBING,
HOUSTON'S RESTUARANTS OF
GEROGIA, INC., and HILLSTONE
RESTAURANT GROUP, INC.,

          Defendant.

Case No.:

JURY DEMANDED

## AFFIDAVIT OF MINALKUMAR PATEL

1.

I, Minalkumar Patel, am more than eighteen (18) years old and I am under no legal

disability which would prevent me from giving this Affidavit. I am giving this

Affidavit voluntarily based on my own personal knowledge of the facts stated

herein.

2.

I am an American citizen of actual and apparent Indian (Asian Subcontinent) descent and the owner/CEO of LabSolutions, LLC, a highly successful clinical toxicology and molecular genetics laboratory based out of Atlanta, GA.

3.

I am a resident of 2171 Peachtree Road NW #19, Atlanta, GA 30309.

4.

On April 15, 2015, at approximately 7 p.m., I arrived at Houston's Restaurant located at 2166 Peachtree Road NW, Atlanta, GA 30309 with Omar Abdel-aleem ("Omar"), Myron Moorehead ("Myron"), and my attorney Yussuf Abdel-aleem ("Yussuf").

5.

We were all seated within the restaurant, initially without incident, by an unknown waitress.

6.

My attorney, Yussuf was wearing a baseball cap as we were being seated. The unknown waitress did not inform him that he needed to remove it.

7.

Shortly thereafter, a woman named Allison Struebing approached our table, identified herself as the general manager of the restaurant, and rudely demanded that Yussuf remove his baseball cap without explanation. She seemed hostile toward Yussuf from the moment she made the demand.

8.

Yussuf obliged Ms. Struebing. While he was removing his baseball cap, he received a phone call on his cellular phone. He took the call. Ms. Struebing, still in our presence, loudly demanded that Yussuf hang up the phone as its use was against the restaurant's policy. Ms. Struebing's open hostility generated attention from other patrons.

9.

Yussuf again obliged Ms. Struebing, but also politely informed her that he didn't appreciate being publicly chastised in front of his important clients. He requested that Ms. Struebing show him the policies she cited. She refused to do so.

10.

Instead, Ms. Struebing ordered everyone at our table to leave the restaurant. I had not violated any policies, nor had Ms. Struebing accused me of doing so.

11.

She left the table and a large man from the kitchen returned in her place. He

ordered all of us to leave immediately, in front of a crowd of patrons.

12.

I did not notice any other minorities within the restaurant other than Yussuf, Omar,

Myron, and myself.

13.

This experience caused me embarrassment, humiliation, and grief.

14.

I returned to the restaurant with Omar and two prospective clients on June 9, 2015

at approximately 8:00 p.m. to discuss a potential multi-million dollar business

transaction. Omar, my prospective clients, and I were removed from the restaurant

by a police officer on April 15, despite complying with all policies cited by

Struebing.

15.

Despite none of us being involved with the disagreement between Yussuf and Ms.

Struebing on April 15, 2015, we were informed that we could not dine at the

restaurant.

16.

Omar, my prospective clients, and I were not accused of violating any restaurant policies before or during the time that were removed from the restaurant by the police officer.

18.

On each occasion, I felt humiliated, embarrassed, and grief-stricken. I felt discriminated against due to my Indian race and because I was not white like the other patrons of the restaurant.

\*\*\*

Signed under the penalties of perjury that the information contained within this Affidavit is true to the best of my knowledge and information.

This $\underline{16}$ day of June, 2015.

Minalkumar Patel_____

_____

Notary Signature                                    6-16-2015

[Notary Seal]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| YUSSUF ABDEL-ALEEM, MINALKUMAR PATEL, MYRON MOOREHEAD, and OMAR ABDEL-ALEEM<br><br>Plaintiff,<br><br>vs.<br><br>ALLISON STRUEBING, HOUSTON'S RESTUARANTS OF GEROGIA, INC., and HILLSTONE RESTAURANT GROUP, INC.,<br><br>Defendant. | Case No.:<br><br>JURY DEMANDED |

## AFFIDAVIT OF YUSSUF ABDEL-ALEEM

1.

I, Yussuf Abdel-aleem, am more than eighteen (18) years old and I am under no

legal disability which would prevent me from giving this Affidavit. I am giving

this Affidavit voluntarily based on my own personal knowledge of the facts stated

herein.

2.

I am an American citizen of actual and apparent Arab descent and a Founding

Member of Joseph & Aleem, LLC, a respected law firm located in Lawrenceville,

GA. I am licensed to practice law in New York, Massachusetts, and Georgia.

3.

I am a resident of 3242 Peachtree Road NE, Unit 1103, Atlanta, GA 30305.

4.

On April 15, 2015, at approximately 7 p.m., I arrived at Houston's Restaurant

located at 2166 Peachtree Road NW, Atlanta, GA 30309 with my clients Myron

Moorehead ("Moorehead"), Minalkumar Patel ("Patel"), and my brother Omar

Abdel-aleem ("Omar"), the VP of research and development of LabSolutions,

LLC.

5.

We were all seated within the restaurant, initially without incident, by an unknown

waitress.

6.

I was wearing a baseball cap as we were being seated. The unknown waitress did

not inform me that I needed to remove it or that it was against any restaurant

policy.

7.

Shortly thereafter, a woman named Allison Struebing approached our table, identified herself as the general manager of the restaurant, and rudely demanded that I remove my baseball cap without explanation. She seemed hostile toward me from the moment she made the demand although I had never previously interacted with her.

8.

I obliged Ms. Struebing. While I was removing my baseball cap, I received a phone call on my cellular phone from yet another of my important clients. I answered my client's phone call. Ms. Struebing, still in our presence, loudly demanded that I hang up the phone as its use was against the restaurant's policy. Ms. Struebing's open hostility generated attention from other patrons.

9.

I again obliged Ms. Struebing, but also politely informed her that I didn't appreciate being publicly chastised in front of his important clients over a baseball cap and cellphone call. I requested that Ms. Struebing show him the policies she cited. She refused to do so.

10.

Instead, Ms. Struebing ordered everyone at our table to leave the restaurant. This included my important clients, an African-American and an Indian-American, who had not spoken or violated any policies.

11.

She left the table and a large man from the kitchen returned in her place. He ordered all of us to leave immediately, in front of a crowd of patrons and my clients.

12.

I did not notice any other minorities within the restaurant other than Patel, Omar, Moorehead, and myself.

13.

This experience caused me embarrassment, humiliation, and grief and a potential loss of trust or propriety in front of my clients, both those in person and the one who called me on the phone and overheard the chastisement by Ms. Struebing.

\*\*\*

Signed under the penalties of perjury that the information contained within this Affidavit is true to the best of my knowledge and information.

This _16_ day of June, 2015.

Yussuf Abdel-aleem, Esq. _____

_____    6-16-2015
Notary Signature

[Notary Seal]